**STATE, Plaintiff, v. MARTIN, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 59524. Decided January 6, 1950.

Frank T. Cullitan, Pros. Atty., by Gertrude Bauer, Cleveland, for plaintiff.
Frank Hurd, Cleveland, for defendant.

## OPINION

By WOODS, J.:

This is the matter of the State of Ohio, Plaintiff, v. Marvin R. Martin, Defendant; Criminal Branch, No. 59,524.

Defendant, Marvin R. Martin, was charged by the indictment returned by the grand jury of this county September 20, 1949, with manslaughter in the second degree. Omitting the formal parts of the indictment, it alleged that the defendant, Marvin R. Martin, on or about the first day of July, 1949, at the county aforesaid, unlawfully and unintentionally killed John Police while engaged in the violation of a state law applying to the use and regulation of traffic on, over or across the roads or highways, to-wit, §6307-12 GC, and four other sections of the traffic code, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Ohio.

The indictment was layed under §6307-18 GC, which reads, Paragraph (a):

"Whoever shall unlawfully and unintentionally kill another while engaged in the violation of any law of this state applying to the use or regulation of traffic, shall be guilty of manslaughter in the second degree."

On this indictment the defendant was placed on trial before this Court and a jury, and was, on October 18, 1949, found not guilty by the jury, and discharged by the court.

Defendant was thereafter, on the 27th day of October, 1949, re-indicted under an indictment identical in terms except the name of the person killed was that of John Batori.

The essential facts of the transaction, as revealed by the record submitted with the plea, are as follows:

The defendant was driving a truck hauling steel from Detroit to the Fisher Body Company; proceeded out St. Clair Avenue to East 140th Street; turned north on East 140th Street, and at the intersection of East 140th Street and Coit Road a collision occurred in which John Police and John Batori, who were riding on a motorcycle, collided with the side of the truck, causing the instant death to each of the persons on the motorcycle.

The State claimed, in chief, that the defendant ran through a red light at the intersection of Coit and 140th Street. The light was a traffic signal of conventional type, suspended overhead at approximately the middle of the intersection.

To the second indictment the defendant entered a plea in bar, in which it was claimed that the defendant Martin had been theretofore in jeopardy for the same offense. To this plea in bar, the State demurred.

The question presented, therefore, is whether the killing of John Batori, with which the defendant is now charged in the second indictment, is the same offense as the killing of John Police, with which he was charged in the first indictment, and upon which he was, after trial by jury upon the merits, acquitted.

If the defendant violated the traffic code by driving through a red light, and by such unlawful act, unintentionally on his part, two people were killed, who were riding on the same motorcycle, did he violate §6307-18 GC twice? Or did he violate the section once?

There appears no reported case in Ohio answering precisely the question presented by the plea and the demurrer thereto.

The applicable constitutional provisions are:

**Article I, Bill of Rights, Sec. 10, of the constitution of Ohio:**

"No person shall be twice put in jeopardy for the same offense."

Article V of the Amendments to the United States Constitution:

"Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

Our opinion herein shall go no further than to determine whether an involuntary manslaughter of two persons attributable to a single violation of law, by the defendant, without any intent on his part to cause any injury, is a single or a multiple offense.

Certain Ohio cases may give some light on the principles to be applied on resolving the question.

In **State of Ohio v. Hennessey, 23 Oh St 339,** the Court had before it the question whether an indictment which charged in one count the stealing of certain property of A and in another count the stealing of certain property of B, the act of stealing being one transaction, the property being taken at the same time, charged one offense, or whether it charged two offenses.

In holding that but one offense was charged, Stone, J., said:

"The particular ownership of the property which is the subject of a larceny does not fall within the definition and is not the essence of the crime. **The gist of the offense consists in feloneously taking the property of another,** and neither the legal nor the moral quality of the act is at all affected by the fact that the property stolen, instead of being owned by one, or by two or more jointly, is the several property of different persons. The particular ownership of the property is charged in the indictment, **not to give character to the act of taking, but merely by way of description of the particular offense.** (Emphasis ours.)

In **Bainbridge v. State, 30 Oh St 264, at 272,** Day, C. J., said:

"While it is the right of every person not to be put in jeopardy more than once for the same offense, the principle shall be so applied as not to create an immunity for crimes which do not constitute the offense for which the criminal has once been exposed to punishment. * * * It is claimed on the authority of **Price v. State, 19 Oh St 423,** where it is held that 'the true test, whether a plea of former acquittal is a sufficient bar in any particular case, is whether the evidence necessary to support the second indictment would have been sufficient to warrant a conviction on the first'. * * * Where but one crime has been committed, it may be regarded as a conclusive test. But where more than one crime of the same kind has been committed by the same person on the same day and under the same circumstances, it cannot be conclusively applied without making the conviction or acquittal of one offense operate as an immunity for another. * * * This rule has therefore always been subject to the fundamental rule equally ancient, that **'the plea must be upon a prosecution for the same identical act and crime.'**" "4 Blackstone Com. 336." (Emphasis ours.)

In **State v. Rose, 89 Oh St 383, at page 386,** Wanamaker, J., said:

"Since we have no common law crime in the state of Ohio, we must look to the statutes for the declaration and definition of a crime. The constitutional provision uses the word 'offense.' Laymen and lawyers alike understand the word 'offense' to here mean simply a crime. Bouvier's dictionary, 'Words and Phrases Judicially Defined,' says 'an offense or

crime in Ohio is **an act prohibited by statute law, for the violation of which a penalty is provided.' "** (Emphasis ours.)

In **Patterson v. State, 96 Oh St 90,** this was a case in which a conspiracy was charged to steal automobiles at different times and from different owners.

The Court held each offense constitutes a separate and distinct offense, and an acquittal of one does not place him twice in jeopardy on the trial of the other.

In the course of the opinion, the Court said:

"Neither can the state carve a single and identical offense into two offenses and impose two punishments for one and the same offense. The state cannot blow hot and cold in criminal cases and occupy inconsistent attitudes by securing separate punishment for the same identical act, as was attempted in **Griffith v. State of Ohio, 63 Oh St 294.**"

In the Griffith case, the defendant pleaded guilty to embezzlement, and was charged and found guilty of obtaining property by false pretenses, each indictment growing out of the same offense.

In **State v. Billotto, 104 Oh St 13,**

"Here two 'human creatures' were killed by different bullets, necessarily fired at different times, though but an instant may have intervened, and the claim is therefore made that because the killings grew out of the same quarrel or controversy, they are the same offense."

This case is relied upon in part by the state, but it is clear that in that case, there were two separate acts of shooting, the fact being that the defendant killed two brothers, shooting one with the one shot from a revolver, and shooting the other with another shot from the revolver, all in the same transaction.

In **Duvall v. State of Ohio, 111 Oh St 657,** the defendant was acquitted of murder while in the perpetration of a robbery, then was indicted for robbery growing out of the same transaction. The Court held there was no jeopardy, the third syllabus reading as follows:

"A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support the conviction upon one offense would be sufficient to warrant a conviction upon the

other. **A single act may be an offense against two statutes,** and if either statute requires proof of an additional fact, an acquittal of one offense requiring proof of such additional evidence does not exempt the defendant from prosecution and punishment under the statute which does not require the proof of such additional facts." (Emphasis ours.)

A person may by one act violate a state statute and a federal statute and be subject to punishment under each, where one act violates two statutes.

The question presented, however, in this matter, is, May a single act constitute two offenses against a single statute?

If, as in **23 Oh St 339, supra,** "the gist of the offense consists in the feloneously taking the property of another," it would seem to follow that the gist of the offense in §6307-18 GC would be in "unlawfully and unintentionally killing another."

And if "the particular ownership of the property is charged in the indictment, not to give character to the act of taking, but merely by way of description of the particular offense," it would seem to follow that the name of the person killed in the indictment under consideration would have like import.

If, as in **30 Oh St 264, supra,** "the plea must be upon a prosecution for the same identical act and crime," it would seem to follow that where there was but one act of violation of a law of the state, applying to the use and regulation of traffic, that there would be but one crime.

Again, if as in **89 Oh St 383, supra,** "an offense or crime in Ohio is an act prohibited by statute law, for the violation of which a penalty is provided," it would seem to follow that by a single act violating a single statute, but one penalty could be inflicted.

And if, as in **111 Oh St 657, supra,** "a single act may be an offense against two statutes," it would seem to logically follow that a single act may not be two offenses against a single statute; which conclusion would be supported in **96 Oh St 90, supra,** where it was said, "Neither can the state carve a single and identical offense into two offenses and "impose two punishments for one and the same offense."

The fact that §6307-18 GC is found in the General Code under the Uniform Traffic Act, rather than under Chapter III, "offenses against the person," of the Penal Code, as pointed out in counsel for defendant's brief, would warrant the conclusion that the legislative intent was to provide punishment for the act of violating the traffic code, resulting

in death. This, then, would be the gist of the offense, and the doctrine of **23 Oh St 339, supra,** would control.

We must keep constantly in mind that criminal statutes are to be construed strictly, in favor of the accused and against the state, and questions of doubt, whether of fact or law, are to be resolved in favor of the accused.

Also, we cannot be concerned with private actions for unlawful death which may, of course, lie against the defendant by reason of each death. The state of Ohio as plaintiff alleges that the act done by the defendant was contrary to the statutes and against the peace and dignity of the state of Ohio.

The Court is unable to see by any process of judicial reasoning how one act in violation of one statute, resulting in the unintentional death, can constitute a breach of the peace and dignity of the state of Ohio more than once.

It would seem if the Legislature intended that a person should be punished as many times as the sum of persons killed by a single act of violation of the Uniform Traffic Code, that it would have made some provision for such circumstance. It does not seem reasonable to believe that the Legislature intended a method of punishment for a single act, in violation of a single statute, which might, in case of multiple deaths, carry punishment well beyond the expectancy of even a young person.

The Court has tried to determine whether it is possible for a situation to exist in law, where there could be two valid verdicts based on identical evidence, for violation of an identical statute, resulting in the unintentional death of two persons.

It is to be remembered that the record discloses that both John Police and John Batori were dead as result of the collision. Under §13437-3 GC, if there are two actions, as claimed by the State, they could be joined under separate counts in one indictment, as claimed by the state. The jury could therefore find the defendant guilty under one count and not guilty under the other count. Or, if tried separately, one jury could find the defendant guilty, and another jury find the defendant not guilty, each acting on identical evidence.

The law is but the application of generations of accumulated common sense. This result would not seem to come within the conception of that definition. The Court can see no reason for not accepting as law the statement of the Court in U. S. v. Marzani, 71 Fed. Sup. 615, when it was said:

"The test of double jeopardy through a multiplicity of counts, is whether a conviction on one count and an acquittal on another would bring about a contradiction on the face of the verdict."

The Court believes that the genesis of the matter was well stated nearly a century and a half ago, by the Supreme Court of Vermont, when it said: (In State v. Joseph Damon, 2 Tyler (Vt.) 387, at 803:)

"It appears that defendant wounded two persons in the same affray, at the same instant of time, and with the same stroke. On regular complaint made, he has been convicted before a court of competent jurisdiction for assaulting, beating and wounding Frederick Miller, one of those persons. He stands here indicted for assaulting, beating and wounding Elias Doby, the other of those persons; and the defendant pleads in bar the former conviction which he alleges to have been for the same offense. The only question is whether the defendant has already been legally convicted of the offense charged in the indictment. Of this there can be no doubt; for it is apparent on the record that assault and battery charged in the indictment, and of which he was convicted by Mr. Justice Randall, were at the same place and in the same affray, and the wounds made by the same instrument and by the same stroke. It is not a question between either of the persons injured by the assault and battery; redress has been or may be obtained by them by private actions. But it is a question between the government and its subjects, and the Court are clearly of this opinion, that the indictment cannot be sustained. The indictment charges the defendant with having disturbed the public peace, by assaulting and wounding one of its citizens. For this crime he says he has been legally convicted by a court of competent jurisdiction. He cannot therefore be again held to answer in this court for the same offense."

To the same effect is Commonwealth of Pennsylvania v. Ernesto et al., 93 Pa. Sup. Ct. 339, where the facts were that in unlawfully operating a still, an explosion occurred, killing seven persons.

"Where each count of an indictment charged the killing of different persons by one and the same unlawful act, there is but one injury to the Commonwealth, and the court is without power to impose a sentence more severe than that provided for a single act of involuntary manslaughter."

The courts of various jurisdictions where the matter has been discussed are not in accord as to what constitutes distinct and separate offenses arising from a single act.

In the briefs filed by able counsel for the state and the defense, the leading cases on each side of the question are cited and quoted from, and well discussed.

The cases are digested in 20 A. L. R. 341, Sec. III, at Page 346, under the title, "Former Jeopardy—different assaults." This note is supplemented by annotation in 113 A. L. R. at page 222 to 226.

Also the cases on "automobile manslaughter" are digested in 172 A. L. R. at page 1062, under the title "Former jeopardy—automobile." Section III, sub-title, "single act causing injury to or death of two or more persons."

Reference is made to the notes in A. L. R. above referred to. The full text of the cases therein cited have been read by the Court, with a view of ascertaining the legal principle upon which the courts differ.

It appears that in some cases the courts do not distinguish between an act violating a law requiring no specific intent, and an act violating a law requiring specific intent.

It is quite possible that an act may be done resulting in death or injury to two or more, and be done with different intent as to each, as pointed out in State v. Wheelock, 216 Iowa 1428, (250 N. W. 617), or the statute being construed may differ materially from the statute in Ohio, as in State v. Freedlund, 200 Minn. 44 (223 N. W. 353). Or the court might try to save the state from a miscarriage of justice, as in People v. Allen, 368 Ill. 368, (14 N. E. 2nd, 397).

The reasoning of the courts holding that there may be as many prosecutions and punishments for involuntary manslaughter as there are persons killed, does not seem to this Court to be truly based upon established judicial principles or to be in line or in principle with the decisions in the state of Ohio.

The demurrer is therefore overruled.

Exceptions may be noted.