DELBERT JEPPESEN, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

49 N. W. 2d 611

Filed November 2, 1951. No. 33021.

*Robert H. Downing* and *Leon A. Sprague,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Dean G. Kratz,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff in error Delbert Jeppesen, hereinafter referred to as defendant, was found guilty of manslaughter in the district court for Nuckolls County, Nebraska. He was sentenced to the Nebraska State Penitentiary, and prosecutes error to this court.

This prosecution is the outcome of a tragedy that occurred at midnight or early in the morning of October 7, 1948, and was due to an automobile collision or accident between an automobile driven by the defendant and an automobile driven by Lydia Lipker with her sister Della Tordrup as a passenger. As a result of the collision both Lydia Lipker and Della Tordrup were killed. Thereafter the defendant was charged in two separate informations identical in form with the exception of the name of the person killed, under section 28-403, R. R. S. 1943, referred to as the manslaughter statute, which reads as follows: "Whoever shall unlawfully kill another without malice, either upon a sudden quarrel, or unintentionally, while the slayer is in the commission of some unlawful act, shall be deemed guilty of manslaughter; * * *."

This appeal involves the conviction of the defendant of the crime of manslaughter for the death of Della Tordrup. The defendant, by leave of court, was granted the right to withdraw his plea of not guilty for the purpose of pleading in bar to the information.

It was stipulated between the State and defendant

that the defendant, who was charged with the unlawful killing and slaying of Della Tordrup on or about October 6, 1948, was the same person who was theretofore tried in the district court for Nuckolls County for the unlawful killing and slaying of Lydia Lipker on or about the same date, and who was acquitted of the charge of killing Lydia Lipker on September 28, 1949; that the acts and omissions of the defendant relied upon by the State in the prosecution for the unlawful killing of Lydia Lipker were the same acts and omissions of the defendant which were relied upon by the State in the prosecution for the unlawful killing of Della Tordrup.

The following facts appear from the record: Two informations for manslaughter were filed against the defendant. The charging part of each was the same, with the exception of the names of the persons killed. Both of the deaths resulted from the same automobile collision or accident. The defendant was found not guilty on the information charging him with killing Lydia Lipker. The trial court overruled the plea in bar.

It is contended by the defendant that inasmuch as the one accident produced the death of two persons and the same evidence with the exception of the name of the person killed would of necessity be relied upon in the prosecution of the defendant in both cases, and as no criminal intent is involved, the acquittal in one case is a bar to the prosecution of the other information. This court has not passed upon this precise question.

Introductory to our consideration of the subject, we set forth here for convenient reference later, certain constitutional provisions.

The Fifth Amendment to the Constitution of the United States provides: "* * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; * * *."

Article I, section 12, Bill of Rights of the Constitution of the State of Nebraska as amended and in force at the present time provides: "No person shall be compelled,

in any criminal case, to give evidence against himself, or be twice put in jeopardy for the same offense."

The plea of former jeopardy is an established maxim of the common law, and has been included in the Constitution of the United States as well as ours. The protection afforded is not against the peril of second punishment, but against being tried again for the same offense.

In Warren v. State, 79 Neb. 526, 113 N. W. 143, the acquittal of the defendant upon the charge of murder of one Lausten was held not to be a bar to a prosecution for the crime of robbery of Lausten committed at or about the time of the killing. The court said: "When a plea of former jeopardy is made by reason of autrefois acquit, the test to determine the identity of the two offenses is whether the evidence necessary to convict in the second case was admissible under the former charge, * * *. If such a condition is shown to exist, the former acquittal is a bar to the second prosecution, but otherwise it will not operate to prevent prosecution upon another charge, even though based upon acts closely related in point of time." The case is cited solely to disclose the test applying to double jeopardy as it appears in this state, and its application to the case at bar as will subsequently appear.

The defendant contends that the requirements of the test so laid down in the above-cited case were met by him for the reason the charges are identical and the evidence necessary for a conviction in the former case was identical and might be sufficient to warrant a conviction in the instant case.

In the annotation appearing in 172 A. L. R. 1062, applying the rule against double jeopardy to offenses involving the operation of automobiles it is said: "Though the courts recognize that a single act may constitute two or more distinct and separate offenses and a person charged therewith may be punished for all of them, they are not always in accord as to what constitutes dis-

tinct and separate offenses arising from a single act. Thus, there is a conflict on the question of how many offenses are committed where two or more persons are injured or killed by a single criminal act in the operation of a motor vehicle. The majority of courts hold that there are as many separate and distinct offenses as there are persons injured or killed by the unlawful act so that successive prosecutions may be instituted against the person who committed the unlawful act without violating the rule against double jeopardy."

Therefore, a prosecution founded upon the same transaction, act, or omission with regard to which a prosecution has already been had, is not necessarily a bar where two offenses may have been committed.

Our statute in defining manslaughter is the enactment of the common-law manslaughter, and under the common law it is the unlawful killing and not the means which brought about the killing that constitutes the offense. It is the identity of the offense, and not of the act, which is referred to in the constitutional guaranty against putting a person twice in jeopardy. When two or more persons are killed, though it be by a single act, yet, since the consequences affect, separately, each person killed, there is a corresponding number of offenses.

In the instant case the same act caused the death of two different persons. Obviously the proof of death of Lydia Lipker cannot possibly convict or acquit defendant of the killing of Della Tordrup. The only thing determined by the prior adjudication is that as to Lydia Lipker's death, the defendant's misconduct or negligence, if such existed, was insufficient to fasten the guilt upon him.

Neither in the Constitution of the United States nor in the Constitution of Nebraska is there any prohibition against successive prosecutions if the wrongful act is the cause of separate and distinct offenses. See State v. Fredlund, 200 Minn. 44, 273 N. W. 353, 113 A. L. R. 215, a case very similar to the case at bar, the exception

being that indictments were brought under the third degree murder statute, which we deem of no particular significance as a distinction. We cite the case for the principle of law announced therein on the issue of double jeopardy. See, also, People v. Brannon, 70 Cal. App. 225, 233 P. 88; People v. Majors, 65 Cal. 138, 3 P. 597, 52 Am. R. 295, to the same effect.

In People v. Allen, 368 Ill. 368, 14 N. E. 2d 397, it was held that a distinction obtains between an offense and the unlawful act out of which it arises. The act is the cause of the offense which, conversely, is the result of the act. The constitutional inhibition is directed to the identity of the offense and not the act. Where a single felonious act results in the commission of two or more crimes not embraced in different degrees of the same offense, there is but a single physical act, the collision, from which two persons met their deaths. See, also, Fleming v. Commonwealth, 284 Ky. 209, 144 S. W. 2d 220; Commonwealth v. Maguire, 313 Mass. 669, 48 N. E. 2d 665.

In State v. Taylor, 185 Wash. 198, 52 P. 2d 1252, it was held that: "Where defendant, accused of manslaughter in five counts, was found guilty on three counts of causing the death of three persons and not guilty on two counts of causing the death of two others, each killing constitutes a separate crime and on the granting of a new trial, a plea of former jeopardy does not lie, * * *." See, also, Fay v. State, 62 Okl. Cr. 350, 71 P. 2d 768; Lawrence v. Commonwealth, 181 Va. 582, 26 S. E. 2d 54.

The defendant relies on State v. Wheelock, 216 Iowa 1428, 250 N. W. 617, and State v. Cosgrove, 103 N. J. Law 412, 135 A. 871, to which might be added Smith v. State, 159 Tenn. 674, 21 S. W. 2d 400, as supporting his contention as to why his plea in bar should be sustained. It is true that the afore-cited cases sustain the defendant's contention, however, they are contrary to

the recent trend of judicial decisions and the weight of authority respecting this issue.

In the Ohio case of State v. Martin, 90 N. E. 2d 706, a very recent case relied upon by the defendant, it is true the decision in the Court of Common Pleas sustained defendant's position. However, in State v. Martin, 154 Ohio St. 539, 96 N. E. 2d 776, the Supreme Court of Ohio held: "When a single unlawful act results in the killing of more than one person, each homicide constitutes a separate offense for which the defendant may be tried without being twice put in jeopardy." The Supreme Court of Ohio affirmed the Ohio Court of Appeals. It is apparent the cited case supports the opposite view contended for by defendant, and is in line with the majority rule.

From a review and analysis of the cases on the question presented, we conclude that the more logical view is contained in the cases cited by the State, rather than the authorities cited and relied upon by the defendant. We conclude the trial court properly overruled the defendant's plea in bar.

The defendant contends the evidence is insufficient to warrant the judgment of conviction.

To sustain the conviction of the defendant of the crime charged the evidence must prove beyond a reasonable doubt that the defendant killed Della Tordrup while he was in the commission of some unlawful act. The instructions of the trial court limited the jury to one or more of the following unlawful acts alleged to have been negligently committed by the defendant: (1) The operation of a motor vehicle in such manner as to indicate an indifferent or wanton disregard for the safety of persons or property; and (2) that the defendant failed to come to a full stop on entering or crossing the state highway on which stop signs were erected, or to give right-of-way to vehicles on said highway.

This court held, in Benton v. State, 124 Neb. 485, 247 N. W. 21, that: "When one drives an automobile in

violation of law pertaining to the operation of such vehicles on the public highway and in so doing, as a result of the violation of law, causes death to another, he is guilty of manslaughter." See Fielder v. State, 150 Neb. 80, 33 N. W. 2d 451, and cases cited therein.

The record discloses that during the evening of October 6, 1948, Lydia Lipker, driving her father's car, a 1935 black Chevrolet coach, came to Superior to get her sister Della Tordrup to take her to their parents' farm home to do some work. They did some chores in Superior and later met Della's husband at the Hill-Top Cafe at the north edge of the city where the three of them had sandwiches and coffee. Before the women left Della's husband checked the tires and the lights, and found "everything in perfect condition." Lydia got into the driver's seat and Della was seated to her right. They proceeded north on State Highway No. 14 to State Highway No. 3 which is a graveled-surface highway runing in an east and west direction. They turned east on Highway No. 3 to proceed to their parents' home. On this route there is an intersection three miles west of Ruskin. The weather was somewhat cold and clear, and the highways were dry.

The defendant, at the time of the accident, lived three miles west and three miles north of Ruskin. He testified that he had been in Nelson to procure some corn-picker equipment. He obtained gas for his car there and proceeded to Hardy to fulfill a dental engagement after which he went to a pool hall, finished playing a game of cards for some other person, and drank a bottle of beer. The evidence showed that he might have drunk two bottles of beer that evening. Contrary to the State's contention, there is no competent evidence of the defendant being intoxicated, and the court properly declined to submit this issue to the jury. The defendant left the pool hall about 11 p. m. and went to his car which was parked in front of the dental office. Upon leaving Hardy and proceeding to his home, the defendant took a dirt

road running north and south which intersects State Highway No. 3. He remembered crossing a bridge which crosses Spring Creek and is half a mile south of the intersection where the accident occurred. He was driving a Ford V-8 which was in good mechanical condition. The next thing he remembered was trying to loosen his denture when he was in the hospital at Superior.

A witness testified that he left Ruskin about midnight. He was traveling on State Highway No. 3, and when he arrived three miles west of Ruskin he observed two cars on the north side in the ditch. This point is an intersection and there is a dirt road upon which this witness would turn north to go to his home. The Lipker car was on the north side of the highway lying on its right side, about 75 or 80 feet east of the intersection along the fence line. The defendant's car was pointed a little to the northeast, lying on its right side, 12 or 13 feet from the intersection, next to the corner post on the northeast corner of the intersection. No lights were burning on either car. The intersection is practically straight. There is a little raised strip about a quarter of a mile north of the intersection. The road south of the intersection is level with just a little slope. The highway east and west is practically level.

The next morning a witness looked over the scene of the accident to ascertain if either of the cars had tried to swerve. The tracks of the Lipker car were on the south side of the road east of the center of the intersection. It appeared as though the defendant had tried to turn a little to avoid striking the Lipker car. This witness was unable to tell where the accident happened due to the large amount of travel at the intersection.

The sheriff arrived at the scene of the accident about 12:15 a. m. The defendant and Bill Krogh were there. The two girls were lying on the south side of the Lipker car. He testified that the defendant's car was a little to the northeast of the intersection on the east side of the road running north and south. The Lipker car was

further east, on the north side of State Highway No. 3, lying on its side. Della was lying on the south side of the Lipker car wrapped in blankets. The sheriff did not talk to her. Her pulse was weak. The sheriff and Bill Krogh took her to a hospital in Superior, a distance of 16 miles from the scene of the accident, and returned to the scene of the accident about 1:30 a. m.

There were stop signs located at this intersection. The stop sign on the south side of the intersection was in line with the fence row that ran east and west, and the stop sign on the north side of the intersection was a little south of the east-west fence line on that side of the highway. The stop sign on the south side of the highway is located south of the shoulder of the highway along the edge of the north-south road 15 to 18 feet south of the shoulder of the highway. The actual measurement of the distance between the stop sign located on the southeast corner of the intersection and the center of the intersection is 41 feet. The highway is 81½ feet from corner post to corner post, from north to south. The traveled portion of State Highway No. 3 is 30 feet. The distance from the rear of the defendant's car to the center of the intersection was 20 or 22 feet. There was a mark from the rear of the defendant's car which extended 18 feet. Near the Lipker car there was a mark which came from the intersection on the north side of State Highway No. 3 off of the shoulder and looked as though it might have been made by a wheel turning and pushing, making the mark along the shoulder of the road. It hit and missed, that is, it would show the mark for a space and then would not show it. The rear end of the Lipker car was 70 feet northeasterly from approximately the center of the intersection. The sheriff discovered some glass about 15 feet east of the center of the intersection. It was headlight glass from the defendant's car. The defendant was coming from the south and the Lipker car was coming from the west, as the sheriff observed the posi-

tion of the cars and the physical facts at the scene of the accident.

The hood of the defendant's car was sprung and damaged, the grille was badly bent, the transmission was broken, the lens of one headlight was broken, the fender was bent and damaged, a tire was down, and the tire rim was bent. The right side of the Lipker car was caved in, the top was dented, the frame was sprung, the left rear fender was damaged, and the window glass was broken out on the left side of the Lipker car. The lights were not damaged. The Lipker car was caved in just about the center of the car.

The doctor who attended Della was acquainted with her. He testified that he saw her at the hospital. She was suffering from shock, and had severe bruises, injuries, and cuts. She was not conscious. Her death was attributed to head injuries and a hemorrhage under the skull. She passed away at 5 a. m., the morning of October 7, 1948.

The same doctor was acquainted with the defendant. He saw him in the hospital at Superior the early morning of October 7, 1948. The defendant was bruised about the head and had an admission diagnosis of concussion. He was unable to furnish a history as to how the accident happened. He was not clear mentally, did not remember what he had been through, and was suffering from amnesia.

At no time in the testimony is there any statement made by the defendant as to how the accident happened or that he knew how it happened. On the Saturday following the accident, at the home of John Lipker, several witnesses, principally Lipker relatives, testified that the defendant and his wife were present at the home and stated to John Lipker, the father of Della, and her mother, that he came to give his sympathy, that he was sorry, and said: "It is my fault." The latter statement is denied by the defendant and his wife.

The foregoing constitutes the relevant and material

evidence preseented to the jury upon which a verdict of guilty was returned.

We fail to see in what manner the statement made by the defendant, when he gave his sympathy to Della's parents, that he was sorry and it was his fault could constitute an admission of any unlawful act committed by him. While it is true that admissions by defendant of facts tending to establish a criminal charge against him are generally considered direct and not circumstantial evidence, as set forth in Fisher v. State, *ante* p. 166, 47 N. W. 2d 349, and cases cited therein, the admissions must be of such character as to meet the requirement of the rule as stated. In this case there is no such admission. It is apparent that all the evidence to prove one or more of the unlawful acts alleged to have been committed by the defendant is circumstantial, and consists entirely of physical facts observed by witnesses after the accident.

"If circumstantial evidence is relied upon in a criminal prosecution, proof of a few facts or of a multitude of facts all consistent with the supposition of guilt is not sufficient to warrant a verdict of guilty. In order to convict, it is necessary not only that the circumstances all concur to show beyond a reasonable doubt that the defendant committed the crime and be consistent with the hypothesis of guilt, since that is to be compared with all the facts proved, but that they be inconsistent with any other rational conclusion and exclude every other reasonable theory or hypothesis except that of guilt. The facts proved must be consistent with each other and with the main fact sought to be established. Any fact or circumstance susceptible of two interpretations must be resolved most favorably to the accused. * * *

"When circumstantial evidence is relied upon, the facts and circumstances must form a complete chain and point directly to the guilt of the accused in such a conclusive way as to exclude any other reasonable conclusion, every element essential to the conclusion must

be proved by competent evidence beyond a reasonable doubt, and the existence of a reasonable doubt as to any one of them requires an acquittal." Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539, and cases cited therein.

This record is void of evidence as to the speed of either the Lipker car or the defendant's car. Likewise, it is void of evidence that the defendant did not stop at the stop sign, that he operated his automobile in an unlawful manner, or that he violated the rules of the road with reference to yielding the right-of-way, nor is there any evidence that he would be required to yield the right-of-way. There is no evidence as to how the accident happened. The physical facts do not disclose the manner in which the accident happened, nor do the same designate the place of the accident.

We conclude that the evidence is insufficient to sustain the judgment of conviction. The conviction and sentence of the defendant should be, and they are, set aside with directions to the trial court to dismiss the case and discharge the defendant.

REVERSED WITH DIRECTIONS TO DISMISS.