STATE OF NEBRASKA, APPELLEE, v. LAWRENCE DUSSAULT, APPELLANT.

225 N. W. 2d 558.

Filed February 6, 1975. No. 39606.

Frank B. Morrison, Sr., and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

Defendant was charged with the unlawful possession of a controlled substance with intent to deliver. He waived a trial by jury and pursuant to stipulation of the parties was tried by the court on the record of the evidence received during a pretrial suppression hearing and a report of the chemical analysis of the seized substance. The judge found the defendant guilty and sentenced him to a term of 1 to 2 years in the Nebraska Penal and Correctional Complex. The error claimed on appeal is the wrongful denial of the motion to suppress the evidence consisting of approximately 28,000 bagged capsules of amphetamines. It is argued that the affidavit for the search warrant under which the luggage of the defendant was searched is insufficient because it is based upon information of an informant and does not contain sufficient statement of the underlying circumstances to permit the issuing magistrate to properly judge the credibility of the informant and the reliability of his information.

The evidence adduced at the suppression hearing indicated that on September 7, 1973, Richard W. Larsen, a narcotics investigator for the Nebraska State Patrol, did, at the request of a deputy county attorney of Lancaster County, meet with an informant who advised him that the defendant, whom the informant identified by name and by place of residence, would fly on that day by United Air Lines from Omaha to a California destination with the sum of $2,000 on his person for the purpose of purchasing 50,000 tabs or capsules of amphetamines,

known in the illegal drug traffic as white crosses; and that the defendant would return from California to Omaha on the 8th or 9th carrying the drugs in his luggage and would deliver the white crosses to three or four persons. The informant also at that time gave Larsen information concerning the activities of two other drug traffic suspects in Lincoln. Larsen knew from other information he had that this latter information was accurate. He had had no previous acquaintance with the informant.

As a result of the conference the informant agreed to obtain the flight number on which Dussault would leave Omaha. The informant later called Larsen and informed him that the flight would leave Omaha at about 4:30 p.m. In the meantime Larsen had relayed the information first received to the Nebraska State Patrol narcotics investigator in Omaha. He in turn solicited the assistance of the Omaha police department. The Omaha investigator and an Omaha police officer confirmed that a person fitting Dussault's description did board the flight at the time indicated. The Omaha police department advised Larsen that, according to their information, Dussault was engaged in the drug traffic.

The Nebraska State Patrol investigator in Omaha then advised representatives of the Federal Bureau of Narcotics and Dangerous Drugs of the information he had received. That agent in turn informed bureau agents in California who observed Dussault deplane from the flight in California and attempted to keep him under surveillance. At about 9:30 p.m. on September 9, 1973, Larsen was informed by the narcotics investigator in Omaha that the agents in California had advised him that Dussault had boarded a certain United Air Lines flight for Omaha. Larsen, Sergeant Charlie Parker of the Omaha police department drug and vice squad, and other officers, at least one of whom was personally acquainted with Dussault, went to Eppley Field, Omaha, and met the flight in question. Dussault was observed

leaving the plane and picking up two items of luggage. When he started toward the terminal exit Dussault was placed under arrest and his luggage seized. The defendant was then taken to the Omaha police station. The luggage was not opened until after Larsen and Parker had made an affidavit and obtained a warrant to search the luggage. When they searched, the drugs were found.

The affidavit sworn to by Larsen and Parker described the luggage to be searched and the material to be seized, to wit, the amphetamines. The substance of the supporting information set forth in the affidavit was that Larsen had been informed that Lawrence J. Dussault, a Caucasian male, 21 years of age, would arrive in Omaha at about 10:25 p.m. on Sunday, September 9, 1973, by air arriving at Eppley air terminal; that in his luggage he would have 50,000 white crosses, amphetamines; that Dussault had, in fact, arrived at the time specified and had in his possession two suitcases; and that the information that Larsen and Parker had received was from a reliable source whose truthfulness was proved by the fact that other information which he had given had been verified by the officers and was accurate.

It is apparent from the recital of the evidence we have set forth that the officers had considerably more information than was set forth in the affidavit upon which the warrant was issued. Why more or all the information was not incorporated in the affidavit is not apparent for, with its inclusion, the defendant's position would not even be arguable.

To support his claim, the defendant relies primarily upon Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723; Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637; and Whiteley v. Warden, 401 U. S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306.

The State relies upon State v. LeDent, 185 Neb. 380, 176 N. W. 2d 21, for its claim of the sufficiency of the affidavit. It further contends that irrespective of the

affidavit and warrant, probable cause existed for a warrantless arrest and search. The State cites section 29-404.02, R. S. Supp., 1974; State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595; Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327; United States v. Murray, 492 F. 2d 178; and White v. United States, 448 F. 2d 250.

We hold that the State is correct in both aspects of its contentions. The Fourth Amendment to the Constitution of the United States makes no distinction in the standards applicable to a determination of probable cause for arrest and probable cause for search and seizure. State v. Rice, 188 Neb. 728, 199 N. W. 2d 480; Draper v. United States, *supra*; Spinelli v. United States, *supra*.

In Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879, the Supreme Court said: "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . . Probable cause exists where 'the 'facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U. S. 132, 162."

In Spinelli v. United States, *supra*, the United States Supreme Court cited Draper v. United States, *supra*, as an appropriate example of probable cause. It there said: "The detail provided by the informant in Draper v. United States, 358 U. S. 307 (1959), provides a suitable benchmark. While Hereford, the Government's informer in that case, did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover,

Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way. . . . Once again, Draper provides a relevant comparison. Independent police work in that case corroborated much more than one small detail that had been provided by the informant. There, the police, upon meeting the inbound Denver train on the second morning specified by informer Hereford, saw a man whose dress corresponded precisely to Hereford's detailed description. It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established."

In Draper the informant identified the suspect by description, attire, luggage, and time and place of arrival. In the case at hand, the informant identified the suspect by name, time and place of arrival, and that he would have luggage; the affidavit discloses this, plus the fact that the officers had verified that specific information before seeking the warrant; it also recited that other information given to them in connection with unrelated matters was proved accurate.

The affidavit was sufficient under the standards of both Draper and Spinelli. It is also similar in content to the affidavit approved by the United States Supreme Court in Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697, 78 A. L. R. 2d 233, cited with approval in Aguilar v. Texas, *supra*.

We discussed what we believe to be the import of Aguilar and Spinelli in State v. Rice, *supra,* and will not repeat it here. Moreover, we indicated in that case that the contents of the affidavit may, at a suppression hearing, be supplemented by other evidence known to

the police and if in toto probable cause may be said to have existed at the time of the search, the motion to suppress shall be denied. We there cited Draper v. United States, *supra,* and Whiteley v. Warden, *supra,* as supporting the position we there took. We now expressly hold that at a hearing on a motion to suppress, the contents of the affidavit for arrest or search may be supplemented by additional information proved to have been known by the police at the time the affidavit was made and the warrant issued, but not set forth in the affidavit. See State v. Rice, *supra,* at p. 755, opinion of McCown, J., concurring in result. Such a principle we deem proper in view of the fact that the United States Supreme Court has not resolved the controversy as to whether the police must always get a warrant when it is reasonably possible to do so, or whether a test of reasonableness applied after the fact of the search is sufficient to protect constitutional rights. See our discussion in State v. Patterson, 192 Neb. 308, 220 N. W. 2d 235.

The State's position that the evidence justified arrest and search without warrant is well taken. All the information given by the informant save the actual possession by the suspect of the drugs had been verified by the officers. It is far more detailed and the indicia of reliability is more substantial than in Draper v. United States, *supra* (arrest without warrant on information from an informant, drugs found in search of a person, syringe in a hand-carried zipper bag). The facts in the case at hand are remarkably similar to those in United States v. Murray, *supra* (9th Cir.), (arrest as the defendant deplaned, search of a garment bag). The court in that case cited Draper v. United States, *supra.* In White v. United States, *supra,* the information upon which the search was founded and the corroboration of the informant's information was similar to that here involved. However, the factual situation there was somewhat different and involved the search of an automobile. The court again cites Draper v. United States, *supra.*

What we have said in this paragraph should not, of course, be taken as a departure from the principles we enunciated in State v. Patterson, *supra,* when the search of a residence is involved.

The judgment should be affirmed.

AFFIRMED.