STATE OF NEBRASKA, APPELLEE, v. GEORGE JOSEPH BARTLETT, APPELLANT.

233 N. W. 2d 904

Filed October 9, 1975. No. 39989.

Thomas P. Kelley and Michael Kelley of Kelley & Kelley, for appellant.

Paul L. Douglas, Attorney General, and Gary B. Schneider, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and KUNS, Retired District Judge.

CLINTON, J.

The defendant, Bartlett, was found guilty by a jury of

knowingly or intentionally possessing heroin with intent to deliver. After the verdict, he was found guilty by the court on a second count of being a habitual criminal and was sentenced to a term of 20 to 30 years in the Nebraska Penal and Correctional Complex. On appeal he assigns as error the following: (1) He did not receive a fair trial because the prosecution intentionally and deliberately attempted to establish an association of the defendant with persons known or reputed to be dealers in controlled substances. (2) The court erred in overruling a pretrial motion of the defendant asking the court to prohibit the prosecutor from questioning the defendant concerning a large sum of cash purportedly found in the defendant's home at about the time of the offense charged. (3) The court erred in refusing to give a requested instruction that the jury insist on clear and convincing proof that defendant had the controlled substance in his possession. (4) The habitual criminal statute is unconstitutional. (5) The sentence is excessive. (6) The evidence was insufficient to sustain the verdict. We affirm.

Economy of space and time will be served by dealing with the last assignment first. The defendant, for reasons not explicitly appearing in the record, was suspected by the Omaha police of being a dealer in controlled substances and for that reason became the subject of surveillance by some of the department's undercover officers. This surveillance centered on the defendant's activities at Russ' Lounge in Omaha, Nebraska, from July 31 to August 6, 1974, on which last date he was arrested together with one John Davis in Davis' automobile parked in the lounge parking lot. At that time a quantity of heroin was discovered in the vehicle.

Surveillance by the officers on July 31, August 1, and August 4, 1974, indicated that surreptitious exchanges of money and small packages were taking place between the defendant and others. Examples of the apparent nature of some of these transactions will suffice. On

one occasion, when Bartlett was in the lounge, he was joined by persons identified as Larry and Barbara Glouser. After a brief period Mrs. Glouser left the booth in which the persons were seated, went to the restroom, and shortly returned. Upon her return she was seen to hand a small white package to Glouser. He in turn handed it under the table to Bartlett. After a few minutes conversation the Glousers left. Bartlett then made a telephone call and a few minutes later, after apparently making observation for someone's expected arrival in the parking lot, went to the parking lot where he handed something to another individual. Bartlett then returned alone to the lounge. On another occasion the defendant was observed in the lounge receiving money from one Fuller, then leaving the lounge through the rear door to the parking lot where his motor vehicle was located, and then returning and handing something to Fuller. Shortly thereafter Bartlett made telephone calls. A little later a black male entered through a rear door of the lounge and walked through the bar without speaking or acknowledging anyone, and on out the front door. Immediately thereafter Bartlett left through the rear door and was then seen meeting this black man at that person's automobile on the parking lot. After a brief time Bartlett returned to the bar and the other individual departed.

On August 6, 1974, the undercover officers again had Bartlett under surveillance at Russ' Lounge. On this occasion they had received instructions from their superiors that if they observed an apparent transaction taking place they were to make arrests. On this occasion Bartlett entered the bar through the front door. He then made a telephone call or calls and after drinks and conversation with third persons he left through the rear door and joined John Davis (the same individual who had walked through the bar without recognition of the defendant on the previous occasion) in an automobile in the parking lot. Two of the officers approached the

car from the rear and on opposite sides. One of the officers saw currency in Bartlett's left hand and a roundish ball of foil on the seat between the two men. The two were directed to get out of the automobile and were frisked. Immediately thereafter the package of foil was recovered from the floor of the car on the passenger's side where Bartlett had been seated. It contained what is described as three "spoons" of what later chemical analysis determined to be heroin. The evidence shows that a spoon sells on the street for $100 and the heroin is later broken down into separate packages of 15 or 18 "hits" which sell for $10 each. Currency in the amount of $819 was found on Bartlett at the time of his arrest and $425 on Davis.

Bartlett took the stand on his own behalf. He denied he had ever been engaged in the drug traffic. He denied knowledge of the presence of heroin in Davis' car and explained his presence there by stating that he had been asked by his wife, who was present in the bar with him, to close the window on her car as it had just started to rain. When Bartlett left the bar through the rear door to do this chore, Davis, whom he had known previously, had just driven into the parking lot and asked Bartlett to get in his car as he wanted to talk to Bartlett about getting a job with Bartlett's employer, a waterproofing company.

The foregoing prosecution evidence, if believed by the jury, was sufficient to permit it to find that the defendant was knowingly engaged in the sale of heroin to Davis. The applicable rules are: "To prove unlawful possession of a narcotic drug, the evidence must show that the accused had physical or constructive possession with knowledge of the presence of the drug and its character as a narcotic. . . . Proof of guilty knowledge may be made by evidence of acts, declarations, or conduct of the accused from which the inference may be fairly drawn that he knew of the existence and nature of the narcotic drug at the place where it was found.

But mere presence at a place where a narcotic drug is found is not sufficient. . . . Joint possession cannot be established by the fact that the defendant is or has been in the company of one who has a narcotic drug on his person. An additional independent factor linking the defendant with the narcotic must be shown." State v. Faircloth, 181 Neb. 333, 148 N. W. 2d 187. So far as the questions of his credibility are concerned, the rule is: "In determining the sufficiency of evidence to sustain a conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury." State v. Spidell, *ante* p. 494, 233 N. W. 2d 900.

Defendant asserts that the evidence against him is circumstantial and insufficient because a reasonable theory consistent with innocence can be supported by that evidence. He cites Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539. The evidence in this case is only in part circumstantial and the inferences from it are strong. If the jury disbelieved the defendant's explanations, which it obviously did, the evidence is practically conclusive. We have recently restated the circumstantial evidence rule in what we believe is a more accurate formulation of the principle involved. The reformulation is: The test of the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the accused with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt. State v. Young, 190 Neb. 325, 208 N. W. 2d 267. See, also, State v. Morgan, 187 Neb. 706, 193 N. W. 2d 742. The evidence here is sufficient to meet the criterium of those cases.

After trial began the defendant filed an unverified motion as follows: ". . . moves the Court for an order limiting the prosecution from mentioning or inquiring

about cash money found in the home of George Bartlett on or about the 6th day of August, 1974, pursuant to a search warrant issued on August 6, 1974, by Judge A. Q. Wolf, Judge of the Municipal Court of the City of Omaha, Nebraska, for the reason that said money was not one of the items to be seized under the terms of the search warrant and seizure of this money amounted to a general search of the premises; and further for the reason that said money was not contraband." The court overruled the motion without an evidentiary hearing. No previous motion to suppress, directed to the money found in the search of defendant's home, had been made under the provisions of section 29-822, R. R. S. 1943. A motion to suppress the evidence seized at the time and place of the defendant's arrest had been timely filed, hearing was held thereon, and that motion was overruled.

The motion at issue on this appeal arises in the following context. The evidence showed that Bartlett was employed by a waterproofing company and worked regularly, earning about $300 per week. In his household were Pauline Bartlett and eight children. Four of the children received some support from sources other than the income of the defendant. Pauline was not employed. Pauline testified that the family had to budget and manage carefully to get by on Bartlett's pay. After that, Bartlett took the stand. On cross-examination he admitted that on August 6, 1974, he had eight or nine uncashed payroll checks; that it was not unusual for him to have large amounts of money on his person; and that he had no means of support other than from his employment with the waterproofing company. He was then asked: "Q. Do you have any large amounts of money around your house?" Objection was made and overruled. Counsel for the defendant then in substance orally renewed the motion previously made in writing. The oral motion recited, as did the prior written motion, that the search had been made pursuant to warrant, but that the warrant did not recite that the money was

among the items to be seized. The defendant did not offer the warrant and it does not appear in the record. The oral motion was overruled. Following this, the next question and answer were: "Q. . . . On August 6, 1974, did you have a sum of money in excess of $22,000 in small bills in your home? A. Yes." In response to further questioning the defendant explained that the $22,000 had been saved over a period of 8 or 9 years. On redirect examination he testified that a number of years earlier he had received a workmen's compensation settlement in the amount of $6,000 and that was part of the $22,000 which he had on hand. Neither the payroll checks nor the $22,000 were offered or received in evidence.

The defendant's position cannot be sustained for several reasons. The statement of two of those reasons is sufficient. If we were to assume without proof that the prosecutor's knowledge of the $22,000 was the product of an unreasonable and therefore unlawful search and seizure in violation of the Constitution, it would follow that if the currency itself were offered in evidence, that evidence would be subject to timely motion to suppress under the provisions of section 29-822, R. R. S. 1943. It seems evident that if the search were illegal and an order suppressing the evidence were granted, the State could not avoid the consequence of the order simply by not offering the physical evidence, but merely introducing testimony as to what was found. The converse must logically be true. If a party waives his right to have the physical evidence suppressed by failing to make a timely motion to suppress under the provisions of section 29-822, R. R. S. 1943, he cannot avoid the consequence of his waiver and secure the results of an order of suppression by the expedient of a late motion to suppress testimony or to limit the interrogation of his own witnesses on matters which are relevant and material. Section 29-822, R. R. S. 1943, provides that all motions to suppress are required to be made at least 10 days prior

to trial or they are deemed to be waived unless the defendant is surprised by the possession of such evidence by the State or unless the defendant is not aware of the grounds for such motion before the trial. We hold, therefore, that a party may not avoid the consequence of a waiver under the provisions of section 29-822, R. R. S. 1943, of the right to suppress by an untimely motion to limit the interrogation of witnesses on relevant and material matters.

A second reason for denial of the defendant's claim is this. The sole reason asserted for the claimed illegality of the alleged seizure of the $22,000 is that the money was not described in the warrant. It is not claimed that probable cause for issuance of the warrant did not exist. There is no allegation or claim of any kind that the discovery of the money was unlawful and the result of a search illegal in itself. Under these circumstances the following principles are applicable. If the search is lawful the officers can testify to facts about which they obtain knowledge in the process of a lawful search. Zap v. United States, 328 U. S. 624, 66 S. Ct. 1277, 90 L. Ed. 1477. In that case there was a contractual consent to inspection of books and records as part of a government contract. In the course of the inspection a check was seized by government agents. The Supreme Court of the United States there said: ". . . the knowledge they acquired concerning petitioner's conduct under the contract with the Government was lawfully obtained. Neither the Fourth nor Fifth Amendment would preclude the agents from testifying at the trial concerning the facts about which they had lawfully obtained knowledge. See Paper v. United States, 53 F. 2d 184, 185; In re Sana Laboratories, Inc., 115 F. 2d 717, 718. Even though it be assumed in passing that the taking of the check was unlawful, that would not make inadmissible in evidence the knowledge which had been legally obtained. United States v. Lee, 274 U. S. 559, 563. The agents did not become trespassers ab initio when they took the

check. See McGuire v. United States, 273 U. S. 95. Had the check been returned to petitioner on the motion to suppress, a warrant for it could have been immediately issued. . . . The search and the discovery were wholly lawful. A search warrant would be merely the means of insuring the production in court of the primary source of evidence otherwise admissible. Though consent to the inspection did not include consent to the taking of the check, there was no wrongdoing in the method by which the incriminating evidence was obtained."

The distinction, made in defendant's written motion and upon which he relies in part, between "contraband" and "mere evidence" is no longer a viable distinction and does not aid defendant's position. See Warden v. Hayden, 387 U. S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782.

Defendant's claim of deprivation of a fair trial because of the prosecutor's misconduct rests on the following occurrences. During examination of one of the witnesses for the prosecution the prosecutor put the following question: "Q. Can you tell us whether or not the two Glousers are known narcotics dealers —." The defendant's attorney objected on the ground of lack of foundation and the objection was sustained and the jury was instructed to disregard the implication. During the cross-examination of the defendant the prosecutor asked: "Q. Did you ever have any conversations with Larry Glouser in regard to mixing of any heroin?" Objection was made and a conference took place out of hearing of the jury, after which the court sustained the objection for the reason that the State had not given notice as required by statute of intent to use information obtained by wiretapping. During the direct examination of one of the undercover officers, the following question and answer were admitted: "Q. What did you observe on that date? A. At that time, I observed parties known to me as Barbara Glouser and Larry Glouser arrive in a white over maroon Ford and park in the park-

ing lot in the back there." No objection was made to that testimony.

As is shown by the factual recital earlier given, Larry and Barbara Glouser were two of the persons with whom the defendant was apparently dealing. The defendant, on cross-examination, admitted that he was probably present with the Glousers in the bar on the occasion referred to in the evidence. Under the circumstances here testimony that those persons were narcotics dealers would have been relevant, material, and admissible if appropriate foundation had been laid. Such foundation was not laid and an objection to the question was sustained. There was no error under the circumstances of this case in asking the question. The association with the Glousers had already been established. Their identities could not be appropriately concealed. The probable nature of the transaction with the Glousers in the cafe was already before the jury without objection.

Even if we assume that the asking of the two questions to which objection was sustained was error, we do not believe that the asking could have affected the verdict. No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, finds that no substantial miscarriage of justice has actually occurred. State v. Riley, 182 Neb. 300, 154 N. W. 2d 741; § 29-2308, R. R. S. 1943.

The assignment of error relative to the request for an instruction that possession must be proved by "clear and convincing" proof is unmeritorious. The instructions which the court gave properly defined the crime charged and the term "possession," and then properly laid the burden of proof, and required that proof by the State of all the elements of the crime charged be "beyond a reasonable doubt." The latter term the instructions al-

so properly defined. Defendant cites no decision of this court and no constitutional authority which requires that a special instruction be given on the State's burden of proving a particular element of a crime. Such an instruction would have been redundant and confusing. The authorities on which the defendant relies do not support the giving of the requested instruction. It is not error for the trial court to refuse to give instructions tendered where the substance of the request is covered by instructions given. State v. Davis, 186 Neb. 457, 183 N. W. 2d 753.

We have several times upheld the constitutionality of the habitual criminal statute and will not discuss it further in this opinion. See, State v. Martin, 190 Neb. 212, 206 N. W. 2d 856; State v. Graham, 192 Neb. 196, 219 N. W. 2d 723; State v. Tyndall, 187 Neb. 48, 187 N. W. 2d 298.

It may be admitted that a sentence of 20 to 30 years is severe. We do not conclude, however, that it is excessive. The defendant, after having been convicted of six prior felonies for burglary or escape and having served four terms in penitentiaries, has since launched upon a new and more vicious criminal career. He was not in the lowest echelon of the hard drug traffickers.

AFFIRMED.