STATE OF NEBRASKA, APPELLEE, v. KAYE CHAPPLE, APPELLANT.

246 N. W. 2d 714

Filed November 10, 1976.   No. 40476.

Frank B. Morrison and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

Shortly after midnight on March 8, 1975, the defendant and one Sylvester Criss were in a red and white 1968 Impala, proceeding north on I-480 in Omaha, Nebraska, when their car went out of control, sheared off a road sign, crossed the median, struck a yellow 1972 Cougar in the south-bound lane, then a light pole, went over an embankment, and finally coming to rest. Both the driver, Nathan Becerra, and passenger, Deborah Becerra, in the Cougar were killed in the collision. Thereafter, the defendant was charged with, tried, and found guilty by a jury of two counts of motor vehicle homicide. The District Court sentenced the defendant to a term of 3¼ to 10 years in the Nebraska Center for Women at York, Nebraska, on each count, the sentences to run consecutively. The defendant appeals her conviction and sentence. We affirm the judgment and sentence of the District Court.

The defendant first contends that the District Court committed reversible error when it overruled her motions for a directed verdict. She argues that the evidence was insufficient as a matter of law, specifically that the State failed to prove beyond a reasonable doubt that she was driving the vehicle at the time of the accident, an essential element of the crimes charged.

The evidence adduced at the trial pertaining to the issue of who was driving the 1968 Impala was as follows. Sylvester Criss testified that the defendant had driven his car a few blocks from a restaurant to a bar in South Omaha around 10 p.m. When they left the

bar about an hour to an hour and a half later, the defendant again got into the driver's seat. He testified he let her drive because he thought she was "in better shape." He testified that she drove close to 70 miles per hour on the Interstate, and that at one point he grabbed the steering wheel to avoid hitting a small foreign car which she was overtaking too rapidly. This was shortly before the accident.

Officer Venditte testified that he saw the defendant sitting behind the wheel of a red and white Chevrolet in South Omaha about 11 p.m. on the night of the accident.

Kenneth Beckard, a passenger in a vehicle which was traveling about 60 to 70 yards behind the 1972 Cougar testified that he saw "two shadows" in the Impala as it crossed the median. He did not see anyone get out of the Impala. There was no one in the Impala when he walked down to it after directing traffic around the Cougar until the police arrived. Leland Milne, another passenger in the same vehicle, testified that he observed a man and a woman about two-thirds of the way up the bank northeast of where the car was, about 60 feet, when he went down the embankment to check the Impala. The woman was the defendant. He talked to them but did not determine who was the driver.

Officer Lynch, who arrived on the scene of the accident shortly after it happened, testified that he saw a "beige shoe with approximately a two or two and half inch heel on it" wedged between the gas pedal and the hump when he checked the Impala. He showed the shoe to Officer Piernicky while it was still in place. Officer Lynch then kept the shoe until he arrived at the hospital, where he saw an identical shoe lying with the defendant's personal property in the emergency room beneath a bed. Officer Piernicky testified that there was no one in the red Chevrolet when he arrived at the accident scene, and that the occupants of it were approximately 25 feet up the hill from the car. He re-

called that the shoe wedged in the red and white Chevrolet was a dark shoe, possibly black or navy blue. He testified that it was a right shoe.

The defendant acknowledged that she had been sitting in the driver's seat of Mr. Criss' car in South Omaha that evening and that she drove it a few blocks to a bar, but testified that Mr. Criss drove it when they left the bar and went onto the Interstate. She testified that she had black shoes on the night of the accident. Exhibit 14, the left shoe which she was wearing that evening was introduced into evidence. She testified that she had both shoes on when she left the bar and lost her right shoe sometime between entering the Interstate and going to the hospital. She had no idea where the right shoe was.

In State v. McClanahan, 194 Neb. 261, 231 N. W. 2d 351 (1975), we said: "In a criminal action this court will not interfere with a verdict of guilty based upon conflicting evidence unless, as a matter of law, the evidence is so lacking in probative force that it is insufficient to support a finding of guilt beyond a reasonable doubt." The evidence, reviewed above, was sufficient to support a jury finding that the defendant, beyond a reasonable doubt, was the driver of the car at the time of the accident. The defendant argues that, based upon the evidence, it is just as plausible that Mr. Criss was driving at the time of the accident. In State v. Bartlett, 194 Neb. 502, 233 N. W. 2d 904 (1975), we said: "In determining the sufficiency of evidence to sustain a conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations or weigh the evidence. Such matters are for the jury." The District Court was correct in denying the defendant's motions for a directed verdict.

The defendant next contends that her sentence was erroneous and excessive. The District Court sentenced the defendant to a term of 3¼ to 10 years in the Ne-

braska Center for Women at York, Nebraska, on each count, and directed that these sentences be served consecutively.

It is settled law in Nebraska that: "When two or more persons are killed, though it be by a single act, yet, since the consequences affect, separately, each person killed, there is a corresponding number of offenses." Jeppesen v. State, 154 Neb. 765, 49 N. W. 2d 611 (1951). The defendant argues that when a single highly negligent act results in the death of two or more persons, even though it gives rise to multiple offenses for the purposes of prosecution under Jeppesen, *supra,* for the purposes of sentencing, it should be treated as a single offense, and that the defendant, therefore, should not be subject to imprisonment for a period longer than that permitted on a conviction of one count of motor vehicle homicide, or a maximum of 10 years. § 28-403.01, R. R. S. 1943. There is no merit to this contention.

The defendant was properly charged with two counts of motor vehicle homicide. The District Court had the authority to sentence the defendant on each count which she was convicted of, and to direct that the sentences on each count be served consecutively, keeping in mind what was said in State v. Saxon, 193 Neb. 278, 226 N. W. 2d 765 (1975): "It is well settled that the test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count. The test is whether some additional evidence is required to prove one of the offenses than is necessary to prove one of the other offenses."

For one of the counts the State had to prove the death of Nathan Becerra as a result of the defendant's actions. For the other count, the State had to prove the death of Deborah Becerra as a result of the defendant's actions. This satisfied the Saxon test. There was

nothing erroneous in the District Court sentencing the defendant as it did.

From our review of the record we do not believe that the sentence is excessive. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. State v. Howard, 194 Neb. 521, 233 N. W. 2d 573 (1975). The action of the District Court in directing that sentences be served consecutively will not be disturbed on appeal unless the record reveals an abuse of discretion. State v. Tweedy, 196 Neb. 251, 242 N. W. 2d 629 (1976). The defendant had been drinking heavily prior to the accident. A blood test, given the defendant by a doctor at the hospital after the accident to determine alcoholic content for the purposes of giving an anesthetic, revealed the alcoholic content in the defendant's blood at .29 percent by weight volume. The defendant was driving at high speed and was not even licensed to operate a motor vehicle at the time of the accident. The presentence report shows she has a lengthy record going back to 1954 including many varied offenses, such as obtaining merchandise under false pretenses, petit larceny, shoplifting, drunk driving, and prostitution. She has been known by over a dozen aliases.

As a result of the defendant's actions, two innocent people lost their lives. The sentence, as it was imposed by the District Court, will require the defendant to serve a minimum of $6\frac{1}{2}$ years, a maximum of 20 years. Given the circumstances of this case as revealed in the record, we do not believe that this is an excessive price for society to ask the defendant to pay.

The judgment and sentence of the District Court are correct and are affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I respectfully dissent for the following reasons. The reliance by the court upon Jeppesen v. State, 154 Neb. 765, 49 N. W. 2d 611, a double jeopardy case, is wholly

misplaced and, in my judgment, has no bearing upon the question of the propriety of consecutive sentences in this case. First: The holding in Jeppesen is probably dictum. Second: If it was not, it was nonetheless wrongly decided. Third: The defendant's culpability in this case lies in a single, unlawful act and ought to be judged in that way, and therefore imposition of a maximum sentence which is twice as long as that provided by law for the crime involved is unjustified.

In Jeppesen v. State, *supra,* the defendant was charged with manslaughter arising out of his alleged unlawful operation of a motor vehicle. In the accident two people in the second car were killed. Defendant was tried for the death of one and acquitted by the jury. He was then charged with the death of the other and convicted. On appeal in the second case this court overturned the conviction and dismissed the cause because the evidence was insufficient to show any unlawful act on the part of the defendant. The court nonetheless went on to hold that the prior acquittal did not bar the second prosecution. The acquittal by the jury in the first case and the dismissal by the Supreme Court in the second case were both on the same ground — no unlawful act shown. The Jeppesen dictum was wrong in failing to apply the principle of collateral estoppel by reason of the acquittal in the first case.

Ashe v. Swenson, 397 U. S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469, is in point. There the defendant had been acquitted of a charge of robbery. The defense was alibi. The robbery in question was of six poker players at a single table and only one transaction was involved. The United States Supreme Court held that the acquittal of the defendant on the charge of robbery of one of the gamblers prohibited, under principles of former jeopardy, subsequent prosecution for robbery of the others. The reason was collateral estoppel. Only a single transaction was involved and only one issue, that is, the identity of the perpetrator. The first acquittal

determined that issue. This is the principle that should have been applied in Jeppesen.

We ought not, in my judgment, give inadvertent approval to an erroneous application of former jeopardy in a case where the question is the propriety of consecutive sentences.

Since here the defendant was convicted in both cases at the same time and did not suffer two trials, jeopardy is not involved. See State v. Huffman, 186 Neb. 809, 186 N. W. 2d 715. In that case the charges were forgery and the uttering of forged instruments. Consecutive sentences had been imposed. We set one of the sentences aside as surplusage.

In the present case I do not believe consecutive sentences are justified because a single culpable act is involved, that is, the driving while intoxicated and in a highly dangerous manner. Such conduct is, of course, highly reprehensible and atrocious, but I cannot believe that if 10 people were killed consecutive sentences aggragating 32½ to 100 years would be justified, yet this is the principle which the court in this case approves. Conduct such as here involved, reprehensible as it is, is not to be viewed in the same light as a case where a person pulls the trigger 10 times and kills or wounds as many persons.

Lastly I believe the sentence is disproportionate to other sentences imposed in similar cases.

McCown, J., joins in this dissent.