STATE OF NEBRASKA, APPELLEE, V. ADDIE DONALD, APPELLANT.

256 N. W. 2d 107

Filed July 20, 1977. Nos. 40939, 40940.

Thomas M. Kenney and Bennett G. Hornstein, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

The defendant was convicted by a jury of the crime of receiving stolen property. At the time of the commission of that crime he was on probation for another felony conviction. He is also charged with violation of his probation. By stipulation, it was agreed that evidence from the trial on the charge of receiving stolen property could be consid-

ered in determining the violation of the terms of the probation. On June 16, 1976, the defendant was sentenced to serve 3 years in the Nebraska Penal and Correctional Complex on the conviction of receiving stolen property, said sentence to be served consecutively to a sentence of 1 to 3 years on a charge of writing a forged instrument, the charge on which he had been on probation. On this appeal the first error assigned is that the trial court erred in refusing to suppress certain physical evidence seized in the search of a trunk of a car on February 25, 1976. The second and remaining assignment is that the trial court erred in overruling the defendant's motion for a mistrial because of alleged comments of the prosecutor in his closing argument to the jury about the defendant's failure to explain his possession of the stolen goods in the trunk of the motor vehicle.

The first assignment of error must fail for three reasons: (1) The motion to suppress was not timely filed and the objection to the alleged unlawful seizure was therefore waived. (2) The evidence supports the conclusion the search was made at the defendant's consent. (3) The evidence supports the conclusion and finding that probable cause for such search existed.

The record before us does not disclose that any written motion to suppress the evidence was ever filed in this case in accordance with the provisions of section 29-822, R. R. S. 1943. An oral motion to suppress was made on the first day of trial. The statute referred to provides that the motion must be filed in the District Court "where a felony is charged . . . and must be filed at least ten days before the trial or at the time of arraignment, whichever is the later." The statute further provides: "Unless claims of unlawful search and seizure are raised by motion before trial as herein provided, all objections to use of the property as evidence on the ground that it was obtained by an unlawful search and seizure shall be

deemed waived." The statute also contains exceptions as follows: (1) "unless otherwise permitted by the court for good cause shown," and (2) "the court may entertain such motions to suppress after the commencement of trial where the defendant is surprised by the possession of such evidence by the state, and also may in its discretion then entertain the motion where the defendant was not aware of the grounds for the motion before commencement of the trial." Here the record shows the defendant was present when the search was made and observed the seizure of the property. No attempt was made at trial to show good cause why a late filing of the motion should have been permitted.

When the oral motion was made on the first day of trial, objection was made by the State that the motion was untimely. The court overruled the motion. The defendant, through counsel, expressly waived a continuance. During the course of trial, and during the testimony of the officer who made the seizure of the property and the arrest, an unrecorded discussion "in an undertone, and out of the hearing of those present, and not reported by the Court Reporter" took place between the judge and respective counsel. The following is shown by the record to have occurred. "[DEFENSE COUNSEL]: Your Honor, may I approach the Court Reporter to make my objection? THE COURT: You may. (WHEREUPON, [defense counsel], . . . approached the Court Reporter, and in an undertone and out of the hearing of those present, made the following record.)

"[DEFENSE COUNSEL]: I would like the record to reflect that a previous motion to suppress was made by the defendant in this particular case, and in lieu of holding a separate hearing, the Court is going to use the testimony of this witness to determine the question of search and seizures, and the defendant is not waiving any of his right thereto and will have a ruling on it by the Judge with regards to that partic-

ular motion." Nothing appears in the record to show that the statement of defense counsel just referred to was agreed to by the State, nor that the trial judge had acceded to its stated purposes.

"If a defendant waives his right to have physical evidence suppressed by failing to make a timely motion to suppress under the provisions of section 29-822, R. R. S. 1943, he cannot avoid the consequence of his waiver and secure the results of an order of suppression by the expedient of a late motion to suppress testimony. . . ." State v. Bartlett, 194 Neb. 502, 233 N. W. 2d 904. "A waiver of objections to evidence on the ground that it was seized in an unreasonable search occurs when no objection is made at least 10 days before trial and where the exceptions thereto have no application." State v. Stowell, 190 Neb. 615, 211 N. W. 2d 130.

The substance of the testimony of the officer who made the search and the arrest was that on the day in question, while cruising his district, he received a call, "to check the beauty shop at 1823 North 33rd Street for a possible robbery in progress." He had been informed that the report had come to the police department from the 911 operator and that the operator had "locked in" on the phone from which the report had come. The officer drove to the address indicated and parked his car in the street adjacent to the beauty shop. He entered the beauty parlor and talked to the son of the proprietor, the only person then present, and was informed that no robbery was in progress. At that time he noted a car parked nearby with two occupants in it. During the minute or two he was in the shop, one Donald Wright entered. Wright was talkative. He told the officer that something might be going on across the street, then left.

The officer communicated with police headquarters by hand radio while still in the shop and was told that the 911 operator was still "locked in" on the

number from which the call had come. The officer then left the shop and went to a nearby telephone booth. The receiver was off the hook and the 911 operator was on the line. The officer drew the conclusion [and to us it seems a reasonable one] that it was the phone from which the report of the robbery in progress had come. In the meantime the car which the officer had earlier observed parked nearby was driven away.

The officer then got in his car, drove away a short distance, and parked in an alley where he could observe both the beauty shop and an adjacent liquor store. He knew that there were doorways connecting the two shops. After a few minutes the car he had earlier observed returned and parked adjacent to the beauty shop. Donald Wright, to whom he had talked earlier and who was a passenger in the car, got out and went into the beauty shop through the front entrance. The driver of the car, later determined to be the defendant, got out of the automobile and stood by its trunk. A moment later Wright appeared at the doorway of one of the two shops (the record is unclear as to which), and signaled to the driver, who then opened the trunk of the car. Wright then came out of the liquor store carrying two green carrying cases, the exact nature of which the officer could not determine from his point of observation. The cases were placed in the trunk of the car, the trunk lid was then closed, and the two parties got in and began to drive away.

The officer called other cruisers in the vicinity and the car was stopped about a block from the shop. The driver on request got out of the car. He had no identification. The officer informed the defendant of all that he had observed and also related to the driver the report that had been received by the 911 operator, and then told the defendant that he wanted to make inquiry concerning the objects which had been placed in the trunk. The officer testified that

after he had determined that the defendant had no identification on his person and after the conversation above referred to had taken place, he asked the defendant to open the trunk. He stated that the defendant agreed and did open the trunk. The officer then observed a movie projector and a dictating machine. Defendant then stated that he owned them and that he used them in his work. Earlier the officer had determined that the car did not belong to either of the occupants. After the trunk was opened the officer took down the serial numbers of the two machines. He then immediately called the station and was quickly informed that the machines were reported to have been stolen.

The record otherwise shows that these machines and others had been earlier stolen from the place where the defendant was employed.

The area where these events took place is a high crime area.

A reasonable conclusion from the foregoing is that Donald Wright's entry into the beauty shop while the officer was there was an attempt at diversion. The officer stated he suspected that some criminal activity was going on although he was not sure what. He also stated that he knew that Donald Wright was suspected by the police of other crimes.

After the officer learned that the items were stolen the defendant was arrested.

At trial when the two machines were offered in evidence, objection was made that the foundation was insufficient. The objection was overruled.

The defendant later, out of the presence of the jury, but apparently pursuant to some understanding not made completely clear by the record, took the stand and testified to the circumstances surrounding the stop, search, and arrest. His version of the conversation which took place at that time contradicted that of the officer. He testified that the officer said: ". . . would you open your trunk or do

we have to open it for you.'' He stated he feared police harassment and that was the reason he opened the trunk. Following this testimony the trial judge said: ''The ruling of the Court will stand on the search; it was justified under the circumstances.''

The evidence if believed by the trial judge was sufficient to enable the trial judge to determine (1) that probable cause for the search existed, and (2) that, although the trial judge made no specific finding on the point, the search was made with consent.

The applicable rules of law are these. ''The brief detention of a citizen based upon an officer's reasonable suspicion that criminal activity may be afoot is permissible for the purpose of limited inquiry in the course of routine investigation, and any incriminating evidence which comes to that officer's attention during this period of detention may become a reasonable basis for effecting a valid arrest.'' State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595. See, also, Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889; Adams v. Williams, 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612. ''Under the Fourth Amendment to the Constitution of the United States the standard for determining probable cause for arrest and for search and seizure is the same. . . . Probable cause exists in the Fourth Amendment sense where the facts and circumstances, within the officers' knowledge and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed.'' State v. Dussault, 193 Neb. 122, 225 N. W. 2d 558. ''General proscription of Fourth Amendment is against unreasonable, not warrantless, searches.'' Brewer v. Wolff, 529 F. 2d 787. See, also, Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543.

With reference to the assignment that the trial court erred in denying the defendant's motion for a mistrial because of the prosecutor's comments upon

the defendant's failure to testify, the record discloses that during the course of the final argument the prosecutor, after pointing out the evidence which tended to show that the defendant had previously pawned a recorder, an additional item which apparently had been stolen from the defendant's employer, went on to say: "He was driving down the street, you've got stolen property in the trunk — the property which came from your employer, you've got a Police car in front of you and a Police car in back of you.

"You've got a man sitting here who the Officer just saw put the stuff in the trunk.

"You're caught.

"You're either going to flat lay it all out, open the trunk and show it to them or you're going to go back there — with a certain — you want to talk about how certain people react.

"Well, here's things from his employer who he has in his car.

"Now, wouldn't that be a good way to get out of it.

"They are from my employer — I didn't steal them.

"They're here —." At that point defense counsel interrupted and moved for a mistrial. The prosecutor sought permission from the court to complete that portion of his argument. The court refused, cautioned the prosecutor that the argument was bordering on something not proper argument, and told him to get off the subject.

Obviously both the defense counsel and the trial judge interpreted the remarks as a comment on the defendant's failure to take the stand and testify on his own behalf. However, the court overruled the motion for a mistrial.

We cannot, from an examination of the record, be sure that the prosecutor was intending to comment upon the accused's failure to take the stand for the reason that the prosecutor did not complete that

phase of his argument because of the court's ruling. Viewing the cold record, the point of the argument may have been an attempt to show that the remark made by the defendant at the time of the search [testified to by the arresting officer], that the machines belonged to him and that he used them in his work, was in fact an admission of guilt because, if the possession was innocent, the more likely and reasonable explanation the defendant would have given at that time would have been to the effect that the items belonged to his employer and he used them in his job.

It is, of course, constitutional error for a prosecutor or a judge to comment on the failure of an accused to testify. Bruntz v. State, 137 Neb. 565, 290 N. W. 420; Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106.

We do not interpret the prosecutor's comments to the jury as an attack, by implication, upon the defendant for failing to testify in his own defense. Rather, those comments appear to us to have been intended as a refutation of the defendant's explanation relating to the stolen items in the trunk, as testified to earlier by the police officer.

In any event, we have no hesitancy in coming to the conclusion that the error, if any, was harmless beyond a reasonable doubt and did not contribute to the defendant's conviction. Chapman v. California, 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705. In arriving at this conclusion we consider the strength of the evidence against the defendant. The defendant's employer discovered items were missing in January 1976, while the defendant was employed by an organization called GOARC, which owned the property. The cartons containing the machines were on the shelves in their usual locations, but were found to be empty. Inquiry was then made of all employees, including the defendant, as to where the items might be and whether it was possible that they

had been checked out by someone without the necessary paper work. No affirmative response was received from anyone, including the defendant. As already noted, part of the evidence against the defendant (to show knowledge, intent, and design) was evidence that he was the person who had pawned another missing item. The owner of the pawn shop did not make an eyewitness identification of defendant, but identified as accurate the signature on the pawn ticket as that of the person who pawned the articles. He also confirmed the physical description that appeared on the pawn ticket of the person pawning the machine. A handwriting expert identified the signature of the pawn ticket as that of the defendant. The circumstances of the finding of the items in the defendant's possession cannot in any way be equated with one of innocence. This appears to be a case where the injunction of section 29-2308, R. R. S. 1943, applies, to wit: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case . . . for error as to any matter of . . . procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occured."

AFFIRMED.

WHITE, C. THOMAS, J., dissenting.

In State v. Brooks, 189 Neb. 592, 204 N. W. 2d 86, this court held that an inadvertent statement relating to defendant's failure to testify will not justify a reversal of a conviction where the evidence of guilt is overwhelming, citing Bruntz v. State, 137 Neb. 565, 290 N. W. 420.

The comment by the prosecutor appears to have been planned and intentional. It is impossible to conceive of an experienced prosecutor being unaware of the doctrine of Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106.

I severely doubt that comments of a prosecutor of

an accused's failure to testify can ever be harmless error. I dissent for the reasons set forth in the dissent of McCown, J., in State v. Brooks, *supra*.

McCown, J., joins in this dissent.