IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. KOCH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

EDWARD D. KOCH, APPELLANT.

Filed May 24, 2016.    No. A-15-959.

Appeal from the District Court for Cass County: JEFFREY J. FUNKE, Judge. Affirmed.

Julie E. Bear, Deputy Cass County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

BISHOP, Judge.

Edward D. Koch pled no contest to two counts of manslaughter, Neb. Rev. Stat. § 28-305 (Reissue 2008), arising out of the deaths of Matthew Kirchhoff and Emily Widger. The district court for Cass County imposed consecutive sentences of 15 to 20 years' imprisonment on the convictions. Koch appeals, challenging his sentences on a number of grounds. We affirm.

## BACKGROUND

On December 22, 2014, Koch was charged by information in the district court with two counts of manslaughter, a Class III felony. § 28-305(b). The first count alleged that on September 21, 2014, in Cass County, Nebraska, Koch unintentionally caused the death of Matthew while in the commission of an unlawful act, to-wit: driving under the influence, Neb. Rev. Stat. § 60-6,196 (Reissue 2010); driving too fast for conditions, Neb. Rev. Stat. § 60-6,185 (Reissue 2010); willful reckless driving, Neb. Rev. Stat. § 60-6,214 (Reissue 2010); reckless driving, Neb. Rev. Stat. § 60-6,213 (Reissue 2010); careless driving, Neb. Rev. Stat. § 60-6,212 (Reissue 2010); or third

- 1 -

degree assault, Neb. Rev. Stat. § 28-310 (Reissue 2008). The second count alleged Koch caused the death of Emily in the same manner.

On July 20, 2015, while represented by counsel, Koch pled no contest to both counts. Prior to accepting Koch's pleas, the court inquired into his competency, advised him of the nature of the charges against him and the potential punishments, and advised him of the rights he would waive if he pleaded guilty or no contest. The court heard the following factual basis for the pleas:

[O]n or about September 21 of 2014, Matthew Kirchhoff and Emily F. Widger, along with their dog Bear, a chocolate lab that they considered very much a part of their family, were traveling west on Highway 34 at approximately mile marker 347 in Cass County, Nebraska, when they were rear-ended by a vehicle driven by Edward D. Koch.

The collision occurred very near sunset when the sun was low in the sky. During the course of the subsequent investigation Dr. Aaron Linde determined within a reasonable degree of medical certainty that the cause of death of both Matthew and Emily was consistent with the injuries suffered by the collision of Mr. Koch's vehicle into the back of the victims' vehicle. The collision was sufficient to cause the rear of the victims' vehicle to be compacted forward halfway to the front of the vehicle.

In speaking with Mr. Koch at the scene, law enforcement officers were told by Mr. Koch that he was travelling approximately 92 to 94 miles an hour when he hit the victims' vehicle. The speed limit at that location is 60 miles an hour. When asked if he had been drinking alcohol, Mr. Koch initially said no, but later reported, when confronted with the smell on [sic] alcohol on his person, that he had consumed two drinks earlier. PBT revealed blood alcohol level of .144.

When officers read [the] post-arrest chemical test advisement form to the defendant, during the course of that process, Mr. Koch stated that at 10:00 that he had consumed one screwdriver, an alcoholic beverage at brunch prior to leaving Illinois. Mr. Koch also stated that the night prior he had been drinking heavily and he admitted to having used marijuana two days earlier. He also commented that the only thing that they would find in his system was alcohol and marijuana.

During the -- also during the transport to the Cass County Jail, the defendant engaged the deputy that was transporting him, asking why the victims' vehicle was parked in the middle of the roadway. The deputy indicated that to his knowledge the vehicle was not stopped but slowed down due to driving into the bright sun. Defendant indicated that he, too, could see nothing until he was right up on them due to the sun being so bright. The defendant then said -- asked the deputy if they were pulling back onto the road. The subsequent investigation of the witnesses at the scene indicated clearly that that was not the case, that both vehicles were travelling westbound on Highway 34. The accident reconstruction verified that. The accident reconstruction also verified that sun glare was a factor and that it would have required a reduction of speed at the time of the accident. The reconstruction also confirmed the defendant's speed estimations by verifying that at the time of the collision it was their opinion within a reasonable degree of scientific certainty that the speed of Mr. Koch's vehicle was 89 miles an hour.

Subsequent tests detected THC in the defendant's urine and alcohol at .32 [sic] grams per 100 milliliters in the blood. And then there was also a subsequent test by -- or an additional test that was performed by the hospital which showed a content of 192 milligrams per decaliter of blood as determined by the hospital.

While inventorying Mr. Koch's vehicle, officers found a small amount of marijuana and two glass pipes with burnt residue in their bowls which was confirmatory of his statements that he had consumed.

The court found that the factual basis was sufficient and that Koch's pleas were knowing, intelligent, and voluntary. The court entered convictions on both counts.

At the sentencing hearing on September 21, 2015, the court received into evidence the presentence investigation report (PSR), which was over 430 pages long. The PSR indicated that at the time of the incident, Koch was 25 years old, had a high school education, and worked as a systems administrator for a bank in Quincy, Illinois, where he resided. When the incident occurred, Koch was driving from Quincy to Lincoln, Nebraska, for a business trip. The bank terminated him shortly thereafter, and Koch subsequently became self-employed as an information technology consultant. The PSR contained a letter from a technology company in Quincy expressing a willingness to offer Koch a job pending the outcome of his criminal charges.

The PSR further indicated that Koch was unmarried and had no children; he resided in Quincy with his girlfriend and grandmother. His criminal history included one conviction in April 2007 for urinating in public in Phoenix, Arizona, for which he received a fine. Koch had been charged with possession of marijuana and drug paraphernalia in February 2007 in Phoenix, but the charges were dismissed in October of that year.

The PSR documented Koch's efforts following the incident to treat his alcohol abuse and a previously undiagnosed mental illness. It indicated Koch had experienced auditory and visual hallucinations since age 16 or 17 and that following the incident, he was diagnosed with "Schizoaffective Disorder, Bipolar Type," as well as anxiety and depression. Koch's treatment efforts included two hospitalizations totaling approximately 7 days, outpatient treatment with a counselor and psychiatrist, medication management, and participation in Alcoholics' Anonymous (AA). The PSR indicated Koch had not consumed alcohol or drugs since the incident. It also included Koch's written statement and approximately a dozen letters of support from family and friends.

The PSR contained over 90 letters and victim impact statements from family and friends of Matthew and Emily. The letters revealed that Matthew, age 24, had served in the United States Army for 4 years and completed a tour of duty in Afghanistan. At the time of his death, he was an active member of the Army Reserve in Lincoln, Nebraska, and was attending college. Emily, age 22, was also a college student, worked full-time, and lived in Lincoln with Matthew. Matthew and Emily had plans to become engaged and had started a wedding gift registry and selected a wedding date.

At the sentencing hearing, Koch's counsel offered one addition to the PSR, an update regarding Koch's treatment, which the court incorporated into the PSR. Otherwise, Koch made no objections or corrections to the PSR.

Also at the sentencing hearing, the court heard statements from Matthew's mother and Emily's mother and sister. Emily's sister sang two portions of her statement. Koch did not object to any part of the statements from the three women.

The court also heard a statement from Koch. He expressed his remorse and explained his efforts to address his alcohol abuse and mental illness, as well as his progress in treatment. He indicated that on the day of the crash, he was "in a full-blown psychotic episode" during which "[r]isky behavior and careless decisions were at an all-time high." He urged "that this accident was not a product of [his] morals, [his] character or [his] heart, but a product of [his] disease." Koch was "stable and in recovery" and desired to help other addicts and mentally ill persons.

At the conclusion of the sentencing hearing, the court imposed consecutive sentences of 15 to 20 years' imprisonment for the two manslaughter convictions. The court explained its decision:

As is evident today, this case is extremely difficult for all the parties involved. First, we have the death of two innocent victims and their beloved dog. Second, we have the impact their deaths have had on their families and friends. And, third, this court has the difficult task of determining an appropriate sentence. However, any sentence this court imposes will not provide true justice for these victims.

Pursuant to Nebraska law, courts must take into consideration several considerations: That being rehabilitation of the offender, the safety of the public, and retribution for the victims.

In this case, sir, you have no appreciable criminal record. Further, it has been well documented, you have taken substantial steps to address the mental health issues and the substance abuse problems which led to these offenses. The presentence investigation indicates that you have long suffered from various mental health problems. But it also appears that prior to September 21, 2014, you self-medicated for those mental health problems through the use of drugs and alcohol. After September 21, 2014, you have begun to deal with these mental health issues. You've done that through hospitalization, counseling, prescription medications, drug and alcohol treatment and A.A. You have been able to better understand your mental health issues and better control them. And for that I am truly thankful.

However, the price for you to recognize your condition and seek the necessary help to address that mental health issue came at the loss of two innocent lives. Matthew Kirchhoff and Emily Widger paid the ultimate sacrifice for you to be able to understand and seek the treatment necessary. Such cost warrants significant consequence. Matthew was 24 years of age. He was only days away from completing his schooling as a machinist. He had aspirations to further his schooling and become a gunsmith and someday open a business. He was a son, a brother, a grandson, a nephew, a cousin and a friend. He was a veteran who faithfully served his country on active duty in Afghanistan. He was a young man setting forth on his journey of life with a woman he truly loved.

Emily was 22 years of age. She was a daughter, a sister, a granddaughter, a niece, a cousin and a friend. She loved life. She was a singer. She was a hardworking college student with aspirations of being a wife and a mother. She, too, was anxiously starting a life with a man she truly loved.

These two young people were deeply loved by their families and friends, which is evident by today. They brought great joy to the people they met. They were law abiding and responsible individuals. Both were great assets to their communities.

On September 21, 2014, you made the conscious choice to consume drugs and alcohol. You had a BAC of .132. You had marijuana in your system. You had alcohol and drugs within your vehicle. You chose to operate a motor vehicle while impaired. You chose to drive in excess of 90 miles per hour into a blinding sunset. Your choices forever robbed your victims of their life choices. Because of your actions on that fateful day, neither Matthew nor Emily will have the opportunity to fulfill the bucket list that they had prepared. Their families are left to wonder what could have been, and left to cherish only memories, photographs and songs.

The court appreciates that you pled no contest and avoided the necessity of a trial. A trial which would have only further have [sic] harmed the Widger and Kirchhoff families. The court appreciates your efforts to address your mental health issues and your substance abuse problems.

However, the court does not feel that these more recent choices outweigh the choices you made one year ago today. The choices to drive while impaired, to exceed the posted speed limit by more than 30 miles per hour, and to fail to maintain a proper lookout for other vehicles on the roadway. Those choices have caused unimaginable pain and suffering. Those choices demand retribution.

As a result, this court does not believe you are a suitable candidate for probation. This court believes that a lesser sentence than a statutory sentence would promote a disrespect for the law and depreciate the seriousness of these offenses. Further, this court believes that you may reoffend if placed on probation. Therefore, this court orders you to serve a term of not less than 15 years and no more than 20 years in the Nebraska Department of Corrections on Count 1. And to serve a term of not less than 15 years and no more than 20 years in the Nebraska Department of Corrections on Count 2. Said sentences shall run consecutive to each other.

The court also gave a truth-in-sentencing advisement, explaining Koch would have to serve a total of 7½ years of each sentence before being eligible for parole and 10 years on each sentence before attaining mandatory release, assuming no loss of good time credit. Because the sentences were consecutive, this meant Koch would have to serve a total of 15 years before parole eligibility and 20 years before mandatory release.

The court's written sentencing order entered on September 21, 2014, indicated the court had considered the nature and circumstances of the crime; the history, character, and condition of the defendant; the PSR; and the statements received. It stated that "[i]mprisonment of the defendant is necessary for the protection of the public because the risk is substantial that the defendant will engage in additional criminal conduct if placed on probation, and a lesser sentence will depreciate the seriousness of the crime or promote a disrespect for the law." The order granted Koch 4 days' credit against his sentences for time served prior to sentencing. Koch timely appealed to this court.

ASSIGNMENTS OF ERROR

Koch assigns, restated and reordered, that the district court (1) imposed sentences that violate the Double Jeopardy Clauses of the state and federal constitutions, (2) erred in receiving certain portions of the victim impact statements at the sentencing hearing, (3) erred by allowing multiple written impact statements from individuals who were not victims to be included in the PSR, (4) abused its discretion by imposing excessive sentences, and (5) erred by imposing consecutive sentences.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Carngbe*, 288 Neb. 347, 847 N.W.2d 302 (2014).

ANALYSIS

*Double Jeopardy.*

Koch argues that although he pled no contest to two counts of manslaughter, "[t]here was but a single act," making the imposition of multiple punishments a violation of double jeopardy. Brief for appellant at 13. He relies upon the rule from *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), that "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Brief for appellant at 15. According to Koch, the "separately charged offenses of manslaughter constituted but a single offense and as such, the Double Jeopardy Clause protects [him] against the imposition of consecutive sentences and multiple punishments for the same offense." *Id.* at 16.

We are not required to reach the merits of Koch's double jeopardy argument, because he waived it by pleading no contest to two counts of manslaughter, and by failing to raise it in the district court. A voluntary plea of guilty or no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional, including a double jeopardy defense. *State v. Maeder*, 229 Neb. 568, 428 N.W.2d 180 (1988).

However, we have discretion to review the record for plain error. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014).

Having reviewed the record, we conclude that no plain error occurred when the court sentenced Koch on two counts of manslaughter. As pertinent here, the Double Jeopardy Clauses of the state and federal constitutions protect against multiple punishments for the same offense. *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). Although Koch argues the two manslaughter charges constituted the same offense under the test from *Blockburger, supra*, that test is applicable

only if the same act or transaction violates two distinct statutory provisions. *State v. Kleckner*, 291 Neb. 539, 867 N.W.2d 273 (2015). Where, as here, a defendant's course of conduct involves one or more distinct offenses under a single statutory provision, the appropriate analysis focuses on the allowable unit of prosecution. *Id*.

The unit of prosecution for manslaughter is the death of the victim, not the predicate unlawful act. *State v. Huff, supra*. Thus, "[w]hen two or more persons are killed, though it be by a single act, . . . there is a corresponding number of offenses." *Jeppesen v. State*, 154 Neb. 765, 769, 49 N.W.2d 611, 613 (1951). See, also, *State v. Olsan*, 231 Neb. 214, 220, 436 N.W.2d 128, 133 (1989) ("[i]f, in one transaction, a defendant commits crimes against separate individuals, the defendant may be constitutionally charged with and convicted of the separate offenses against each of the victims"). Because Koch caused the deaths of two victims while committing an unlawful act, his convictions and sentences for two counts of manslaughter do not violate double jeopardy. See *State v. Chapple*, 197 Neb. 4, 246 N.W.2d 714 (1976) (rejecting argument that when a single act results in the death of two or more persons, it should be treated as a single offense for purposes of sentencing).

*Impact Statements From Victims and Non-Victims*.

Koch maintains the district court erred in receiving certain portions of the victim impact statements at the sentencing hearing, and in allowing written impact statements from individuals who were not victims as defined in Neb. Rev. Stat. § 29-119 (Cum. Supp. 2014) to be included in the PSR. With respect to the statements received at the sentencing hearing, Koch argues it was error (1) to allow Emily's sister to read an impact statement because she was not a victim as defined by § 29-119, (2) to allow Emily's sister to sing portions of her statement, and (3) to allow Matthew's mother to address the court directly by stating, "Your Honor, please know that you have been in the prayers of our family, that God would guide your heart and your mind in this matter." Although Koch addresses the statements received at the sentencing hearing and those included in the PSR in separate assignments of error and arguments, we can address them together.

"'It is fundamental that error may not be predicated on a ground not preserved by a proper objection.'" *State v. Battershaw*, 220 Neb. 661, 663, 371 N.W.2d 313, 315 (1985), quoting *State v. Bevins*, 198 Neb. 761, 255 N.W.2d 284 (1977). Here, Koch did not object to the victim impact statements read (or sung) at the sentencing hearing, or to the inclusion in the PSR of letters and impact statements from non-victims. Therefore, he has not preserved these issues for appeal. See *State v. Carter*, 236 Neb. 656, 660-61, 463 N.W.2d 332, 337 (1990) ("[w]here no objection is made at a sentencing hearing when a defendant is provided an opportunity to do so, generally, any claimed error is waived and is not preserved for appellate review"). See, also, *Battershaw, supra* (defendant's failure to object to psychiatric evaluations offered at sentencing hearing precluded review of the issue).

Again, however, we have discretion to review the record for plain error. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007). Having done so, we find no plain error with respect to the victim impact statements received at the sentencing hearing or the letters and impact statements included in the PSR, as we now explain.

Neb. Rev. Stat. § 81-1848(1)(d) (Reissue 2014) grants victims, as defined in § 29-119, the right to make a written or oral impact statement to be used in the preparation of a PSR, and the right to submit or read his or her impact statement at a sentencing hearing. A "victim" is defined, in pertinent part, as the nearest surviving relative under the law as provided by Neb. Rev. Stat. § 30-2303 (Reissue 2008). § 29-119(2)(b).

Applying these provisions to this case, the only persons qualified under § 81-1848(1)(d) to read victim impact statements at the sentencing hearing were Matthew's and Emily's parents, because they were the nearest surviving relatives under § 30-2303. However, the Nebraska Supreme Court has explained that § 81-1848(1)(d) "merely provides for a baseline right . . . to give a victim impact statement" and "does not seek to limit the sentencing court's traditional discretion to consider evidence from a variety of sources." *State v. Galindo*, 278 Neb. 599, 670, 774 N.W.2d 190, 245 (2009). In *Galindo*, the court held it was not error to allow relatives who did not qualify as "victims" under § 29-119 to read impact statements at a sentencing hearing. *Id*. Because § 81-1848(1)(d) provides a baseline right, and does not limit a sentencing court's broad discretion to consider evidence from a variety of sources, we find no plain error with respect to the impact statements received at the sentencing hearing or the letters and impact statements included in the PSR.

*Excessive Sentences*.

Koch argues his sentences were excessive "both as to the term[s] of the sentence[s] and the imposition of consecutive sentences." Brief for appellant at 7. Although Koch raises these issues in separate assignments of error, he addresses them together in the argument section of his brief. He maintains that given his age, his minor criminal history, his rehabilitative efforts, his mental illness that was previously undiagnosed, and his extreme remorse, lesser sentences are warranted.

As noted above, an appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). It is the minimum portion of an indeterminate sentence which measures its severity. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990). Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011). "The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life." *Id.* at 196, 802 N.W.2d at 433. As with determining the term of each sentence, trial courts have discretion to determine if sentences will be served concurrently or consecutively. *State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015).

At the time of Koch's offenses, the statutory sentencing range for manslaughter, a Class III felony, was between 1 and 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Accordingly, the 15- to 20-year sentences the court imposed on the manslaughter convictions were within statutory limits. Therefore, the issue is whether the sentences were an abuse of discretion.

The transcript of the sentencing hearing reveals that the district court considered the relevant sentencing factors and specifically addressed much of the information upon which Koch relies in arguing for lesser sentences. The court noted Koch had "no appreciable criminal record." It also acknowledged Koch's efforts to address his substance abuse and mental health issues through hospitalizations, counseling, prescription medications, and participation in AA, and it thanked Koch for those efforts. Prior to sentencing Koch, the court listened to Koch's in-court statement and his expressions of remorse. The court also acknowledged Koch's decision to plead no contest.

Although the court considered Koch's history of substance abuse and mental illness, as well as his efforts to resolve those issues, the court did not believe those factors outweighed the need for sentences of imprisonment. The court offered a thorough and articulate explanation for the sentences it imposed, which was reflective of the time and thought the court put into its sentencing decision. The court explained that it did not feel Koch's "more recent choices" outweighed the choices he made on the day of the offenses. Koch's choices were to consume alcohol and drugs, to drive while impaired, to drive in excess of 90 m.p.h. into a blinding sunset, and to fail to maintain a proper lookout. The court stated Koch's choices "have caused unimaginable pain and suffering" and "demand retribution."

Having reviewed the record, including the transcript of the sentencing hearing and the voluminous PSR, we conclude that the district court did not abuse its discretion in sentencing Koch to consecutive sentences of 15 to 20 years' imprisonment on his two manslaughter convictions. It is apparent from the record that the nature of Koch's offenses was a significant factor in the court's sentencing determination. However, this was a proper factor for the court to consider, as were the other factors the court considered, and we cannot say the court gave it undue weight. Consequently, while we recognize Koch has received formidable sentences of imprisonment and has taken steps that warrant favorable consideration, we cannot say the sentences were based upon reasons that were untenable or unreasonable, or were clearly against justice or conscience, reason, and evidence.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Cass County.

AFFIRMED.